# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

MOOSE RUN, LLC,                    )
                                  )
                    Plaintiff,    )        Case No.: 2:18-cv-00425-GMN-NJK
        vs.                       )
                                  )            **ORDER**
RENATO LIBRIC,                    )
                                  )
                    Defendant.    )
_____ )

      Pending before the Court is the Motion to Dismiss, (ECF No. 18), filed by Defendant Renato Libric ("Defendant"). Plaintiff Moose Run, LLC ("Plaintiff") filed a Response, (ECF No. 27), and Defendant filed a Reply, (ECF No. 31). For the reasons discussed herein, Defendant's Motion to Dismiss is **GRANTED**.

## I.    BACKGROUND

      This case arises from a fraudulently induced wire transfer Plaintiff made to Defendant's company, Bouxtie, Inc. ("Bouxtie"). Plaintiff is a Wyoming company that is registered to do business in Nevada. (Am. Compl. ¶ 3, ECF No. 14). Defendant is a citizen of Croatia and resides in California. (*Id.* ¶ 4).

      In November 2016, Plaintiff joined a networking association operated by Keiretsu Forum ("Keiretsu"), entitling Plaintiff to receive confidential information concerning potential investment opportunities. (*Id.* ¶ 11). In July 2017, Keiretsu contacted Plaintiff to inform it about Bouxtie, a start-up technology company based in California. (*Id.* ¶ 12).

      Keiretsu subsequently arranged a meeting between Plaintiff and Defendant, Bouxtie's CEO. (*Id.* ¶ 13). Shortly thereafter, Defendant solicited Plaintiff for financing, stating that Defendant is a successful businessman and that Bouxtie served as a lucrative business

opportunity. (*Id.* ¶¶ 14–16). Specifically, in August 2017, Defendant represented to Plaintiff that there was $5,000,000 committed to Bouxtie's Series B preferred stock but had availability for up to $10,000,000. (*Id.* ¶ 17). Plaintiff was provided with a presentation packet that included expressions of interest from First Data Corporation and Mastercard, Inc. for $150,000,000 and $300,000,000, respectively. (*Id.* ¶ 18). These documents were later revealed to be forgeries. (*Id.*).

Between August 2017 and March 2018, Defendant made efforts to entice Plaintiff to invest in Bouxtie. (*Id.* ¶ 19). Defendant sent Plaintiff a note purchase agreement and an unsecured convertible note agreement, in addition to Series B stock commitments from other investors, totaling $10,000,000. (*Id.* ¶ 20). Defendant also provided Plaintiff a copy of Bouxtie's bank statement showing a balance of $2,175,574.87. (*Id.* ¶ 21). Plaintiff later learned that the bank record was falsified to reflect at least $2,000,000 more than was actually in the account. (*Id.*). In October 2017, Defendant sent Plaintiff a forged corporate resolution from Bouxtie's board indicating that Plaintiff's investment had been approved. (*Id.*).

On October 13, 2017, Plaintiff wired $1,500,000 to Bouxtie's bank account in Silicon Valley, California. (*Id.* ¶ 26). In December 2017, Defendant furnished an authorized stock certificate to Plaintiff reflecting the issuance of 947,049 shares of Series B preferred stock in Bouxtie. (*Id.* ¶ 27). Defendant also represented that David Lipson, a principal of Plaintiff's, would have a seat on Bouxtie's board. (*Id.* ¶ 28). According to Plaintiff, Defendant made these assurances and provided the fabricated documents without Bouxtie's knowledge or authority. (*Id.* ¶ 31). Shortly after Plaintiff wired funds to Bouxtie's bank account, Defendant transferred the funds to unknown accounts. (*Id.* ¶ 34).

Plaintiff filed its Amended Complaint on May 4, 2018, bringing the following causes of action against Defendant: (1) fraud/intentional misrepresentation; (2) conversion; (3) fraudulent conveyance/transfer; (4) racketeering under NRS 207.470; (5) violation of NRS Chapter 90;

and (6) unjust enrichment. (*Id.* ¶¶ 35–78). Defendant filed the instant Motion to Dismiss[1] on June 1, 2018, pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6). (*See* Def.'s Mot. to Dismiss ("MTD"), ECF No. 18).

## II. <u>LEGAL STANDARD</u>

### A. Rule 12(b)(2)

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Once a defendant raises the defense, the burden falls on the plaintiff to prove sufficient facts to establish that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). A plaintiff can carry its burden only by presenting sufficient evidence to establish that (1) personal jurisdiction is proper under the laws of the state where it is asserted; and (2) the exercise of jurisdiction does not violate the defendant's right to due process secured by the United States Constitution. *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 473 (9th Cir. 1995).

When no federal statute governs personal jurisdiction, the district court applies the law of the forum state. *See Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Nevada has authorized its courts to exercise jurisdiction over persons "on any basis not inconsistent with . . . the Constitution of the United States." NRS 14.065. Thus, the Due Process Clause of the Fourteenth Amendment is the relevant constraint on Nevada's authority to bind a nonresident defendant to a judgment of its own courts. *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).

The Due Process Clause requires that the nonresident must have "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair

---

[1] In light of Plaintiff's Amended Complaint, Defendant's prior Motion to Dismiss, (ECF No. 9), is denied as moot. *See Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) ("[W]hen a plaintiff files an amended complaint, '[t]he amended complaint supercedes the original, the latter being treated thereafter as non-existent.'") (quoting *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967)).

play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make "a prima facie showing of jurisdictional facts." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) (quoting *Doe v. Unocal*, 248 F.3d 915, 922 (9th Cir. 2001)). When analyzing such a 12(b)(2) motion, "the court resolves all disputed facts in favor of the plaintiff." *Id.*

### B. Rule 12(b)(6)

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in a ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may be considered." *Id.* Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in a Ruling on a Rule 12(b)(6) motion to dismiss. *Branch v.*

*Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Syst., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III. DISCUSSION

Defendant moves to dismiss Plaintiff's Amended Complaint on the following grounds: (1) NRS 86.548 bars Plaintiff from bringing suit in Nevada because it is not registered with the Secretary of State as a foreign limited-liability company; (2) the Court is without personal jurisdiction over Defendant given his lack of contacts with Nevada; (3) the fraud-based causes of action are not plead with sufficient particularity; and (4) Plaintiff's causes of action are otherwise not cognizable claims upon which relief may be granted. (Mot. to Dismiss ("MTD") 5:1–16:3, ECF No. 18).

### A. NRS 86.548

Defendant argues that under NRS 86.548, Plaintiff is precluded from bringing this action because Plaintiff was not registered to do business as a foreign limited-liability company at the time of filing. (*Id.* 5:1–21). Plaintiff responds that prior to filing its Amended Complaint,

Plaintiff registered with the secretary of state and is now in good standing. (Pl.'s Resp. 7:9–8:2, ECF No. 27).

Under Nevada law, a foreign limited-liability company must register with the secretary of state before doing business in Nevada. NRS 86.544(1). NRS 86.548 provides that a foreign limited-liability company that "fails or neglects to register with the Secretary of State . . . may not commence or maintain any action, suit or proceeding in any court of this State until it has registered . . . ." NRS 86.548(2). Where an unregistered foreign limited-liability company files an action in Nevada, the proper legal remedy is to "stay the action until the corporation qualifies," rather than dismiss the case. *Exec. Mgmt., Ltd. v. Ticor Title Ins. Co.*, 38 P.3d 872, 875–76 (Nev. 2002).

Here, because Plaintiff has since filed proof of its registration and good standing in Nevada, Plaintiff is presently qualified to bring suit. NRS 86.548 does not bar this action. *Bermuda Rd. Props., LLC v. Ecological Steel Sys., Inc.*, No. 2:12-CV-1579-RCJ-VCF, 2013 WL 1338307, at *7 (D. Nev. Apr. 1, 2013) (allowing suit to proceed where an unqualified foreign corporation registered with the secretary of state during the suit's pendency).

### B. Personal Jurisdiction

Personal jurisdiction is limited under the Constitution to defendants that have "certain minimum contacts with [a state] such that maintenance of a suit does not offend 'traditional notions of fair play and substantial justice.'" *Core–Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1485 (9th Cir. 1993) (quoting *Int'l Shoe Co.*, 326 U.S. at 316). Personal jurisdiction must arise out of "contacts that the defendant *himself* creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (internal quotations omitted).

A court determines sufficient minimum contacts either through specific jurisdiction, where the defendant's specific interaction with the forum relating to the cause of action gives rise to the contacts, or through general jurisdiction, where the contacts with the forum are

systematic and continuous. *See, e.g.*, *Int'l Shoe Co.*, 326 U.S. at 316. If such contacts are established, a court must still determine that exercising personal jurisdiction would not offend the "traditional notions of fair play and substantial justice." *Id.*

### 1. General Jurisdiction

Plaintiff does not dispute that the Court is without general jurisdiction over Defendant. (Pl.'s Resp. 10:1–12). The Court, therefore, turns to specific jurisdiction.

### 2. Specific Jurisdiction

A three-prong test is used to analyze whether specific personal jurisdiction in a given forum is proper. Courts ask whether: (1) the defendant has performed some act or transaction within the forum or purposefully availed himself of the privileges of conducting activities within the forum; (2) the plaintiff's claim arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction over the defendant is reasonable. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). "The plaintiff bears the burden of satisfying the first two prongs of the test," and then, if the plaintiff successfully does so, the burden "shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be unreasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

Purposeful direction and purposeful availment are two distinct concepts. *Id.* A purposeful direction analysis is used in tort suits while a purposeful availment analysis is applied to contract suits. *Id.* The parties do not dispute that the purposeful direction analysis applies here as Plaintiff asserts intentional tort and fraud-based causes of action. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) ("Under our precedents, the purposeful direction or availment requirement for specific jurisdiction is analyzed in intentional tort cases under the 'effects' test . . . ." (citing *Calder v. Jones*, 465 U.S. 783 (1984)); *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1149 (9th Cir. 2017); *Coast Equities, LLC v. Right Buy Props., LLC*, 701

F. App'x 611, 613 (9th Cir. 2017) ("For the fraud claim, we look for "purposeful direction," which is analyzed "under the 'effects' test . . . .") (citation omitted).

### a. Purposeful Direction

Plaintiff claims that sufficient minimum contacts are evidenced by Defendant contacting Plaintiff's agents in Nevada to solicit investments. (Pl.'s Resp. 11:13–16). Plaintiff also points to Defendant's mailings of forged documents to Plaintiff's representatives in Nevada, Defendant's fraudulent promise to appoint one of Plaintiff's principal agents to Bouxtie's board, and Defendant's numerous calls, emails, and text messages to Plaintiff's representatives in Nevada. (*Id.* 12:4–15). Defendant asserts that his only meaningful contacts with Nevada occurred in 2015 and 2016, which was prior to Plaintiff's business relationship with Bouxtie and at a time when Defendant was employed by a different company. (MTD 8:22–9:10).

Under the first prong of the specific jurisdiction analysis, a court analyzes whether the defendant "purposefully directed his conduct toward a forum state," and "usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum . . . ." *Schwarzenegger*, 374 F.3d at 803. Courts consider whether the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, [and] (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (citing *Calder*, 465 U.S. at 783). When determining if the defendant expressly aimed its conduct at the forum state, the court focuses on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017) (quoting *Walden*, 571 U.S. at 284).

### i. Intentional Act

Here, Plaintiff's allegations that Defendant fraudulently induced its investment in Bouxtie through use of knowingly falsified documents is sufficient to demonstrate an

intentional act. (*E.g.*, Am. Compl. ¶¶ 19–26); *see Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002); *Schwarzenegger*, 374 F.2d at 805.

### ii. Expressly Aimed at the Forum State

Plaintiff asserts that Defendant's conduct was expressly aimed at Nevada because Defendant initiated numerous email, text message, and phone call communications to Plaintiff's representatives in Nevada. (Pl.'s Resp. 13:11–16). Additionally, Plaintiff states that Defendant mailed the fraudulent documents to Plaintiff's Nevada representatives, which Plaintiff argues satisfies the express-aiming prong. (*Id.*). Defendant contends that he does not have any contacts related to Plaintiff in Nevada and that Plaintiff's allegations to the contrary, even if true, are insufficient to satisfy purposeful direction. (MTD 2:24–26, 9:6 nn.6–7); (*see generally* Libric Aff., ECF No. 18-2).

Personal jurisdiction cannot be premised upon a plaintiff or third party's conduct within the forum. *Walden*, 571 U.S. at 284. Stated differently, "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285. Furthermore, "[t]he making of telephone calls and sending of letters to the forum state [is] legally insufficient to enable the court to exercise personal jurisdiction over [a] non-resident defendant." *Coast Equities, LLC v. Right Buy Props.*, 701 Fed. App'x 611, 613 (9th Cir. 2017) (quoting *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985)). Nor can personal jurisdiction be established where the links to the forum only occurred "because it happened to be where Plaintiff resided." *Morrill*, 837 F.3d at 1144. In *Morrill*, the court found that the Arizona district court could not assert personal jurisdiction over a non-resident defendant when the defendant sent letters and emails, made phone calls, and mailed documents to plaintiffs in Arizona. *Id.* at 1142. There, the communications were related to litigation in Nevada but unrelated to any dealings in Arizona. *Id.* at 1144.

In the present case, Defendant's alleged communications with Plaintiff's principals in Nevada are insufficient to confer personal jurisdiction. Defendant did not meet with Plaintiff's principals in Nevada; they met in California. (Libric Aff. ¶¶ 20–21, 28, ECF No. 18-2). Defendant did not initiate the first contact between the parties; the first contact was facilitated through Keiretsu, a third-party network, which cannot satisfy minimum contacts. (Am. Compl. ¶ 12); *see Walden*, 571 U.S. at 284. Furthermore, the fact that Plaintiff's principals reside in Nevada and received Defendant's communications there is not enough for the express-aiming prong. *See Morrill*, 837 F.3d at 1142–44; *Coast Equities LLC*, 701 Fed. App'x at 613.

### iii. Causing Harm in the Forum State

Lastly, Plaintiff argues that Defendant's knowledge that Plaintiff is a Nevada-based company shows an intent to cause harm to Plaintiff in Nevada. (Pl.'s Resp. 13:13–15). Plaintiff additionally asserts that its representatives in Nevada authorized the wire transfer to Bouxtie, from which Defendant misappropriated funds, therefore harming Plaintiff. (*Id.* 13:21–23). Defendant responds that Plaintiff presented itself as a Wyoming company at all pertinent times and regardless, Defendant's awareness of Plaintiff's citizenship is irrelevant to the purposeful direction analysis. (MTD 9:6 n.6); (Libric Aff. ¶ 24).

"[F]oreseeability of injury in a forum 'is not a sufficient benchmark for exercising personal jurisdiction.'" *Axiom*, 874 F.3d at 1070 (quoting *Burger King*, 471 U.S. at 474). Without more, the potential foreseeability of injury does not show that a defendant purposefully directed his conduct toward a particular forum. *Morrill*, 837 F.3d at 1145. Furthermore, "a tort must involve the forum state itself, and not just have some effect on a party who resides there." *Id.*

Even assuming Defendant knew of Plaintiff's Nevada citizenship and that Plaintiff could be harmed in Nevada, that knowledge alone is insufficient because potential foreseeability does not amount to purposeful direction. Finally, Plaintiff's act of authorizing the wire transfer from

Nevada, even if credited as true, cannot serve to establish *Defendant's* purposeful direction. *See Walden*, 571 U.S. at 284.

In summary, Plaintiff has not satisfied the first prong of the specific jurisdiction analysis. Because Defendant has not purposefully directed his conduct toward the forum in Nevada, the Court cannot exercise personal jurisdiction over him. Therefore, the Court grants Defendant's Motion and dismisses Plaintiff's Amended Complaint without prejudice.[2] *See Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846, 847 (9th Cir. 1999) (explaining that dismissals for lack of jurisdiction should be "without prejudice so that a plaintiff may reassert his claims in a competent court.") (internal citations omitted).

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, (ECF No. 18), is **GRANTED**. Plaintiff's Amended Complaint is **DISMISSED without prejudice.**

**IT IS FURTHER ORDERED** that Defendant's prior Motion to Dismiss, (ECF No. 9), is **DENIED as moot**.

The Clerk of the Court shall close the case and enter judgment accordingly.

**DATED** this __19__ day of March, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Judge

---

[2] Because the Court is without personal jurisdiction over Defendant, the Court need not consider Defendant's 12(b)(6) arguments.